# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MATTHEW E. FOX,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

Case No. 17-CV-635-JPS

**ORDER**

**1.    INTRODUCTION**

In this action, Plaintiff seeks reversal of a decision of the Commissioner of Social Security denying him benefits pursuant to the Social Security Act, 42 U.S.C. § 405(g). The parties have submitted their briefs on the matter. (Docket #18, #19, and #20). Upon review of the entire record, and in light of the arguments presented, the Court finds that Defendant's decision must be reversed and the cause remanded to the Social Security Administration for further proceedings.

**2.    BACKGROUND**

    **2.1    Legal Framework for Social Security Disability Claims**

To be eligible for disability benefits under the Social Security Act, a claimant must be found to be "disabled" by the Social Security Administration ("SSA"). 42 U.S.C. § 423(a). In most cases, to determine whether a claimant is disabled within the meaning of the Act, an Administrative Law Judge ("ALJ") gathers evidence, holds a hearing, takes testimony, and performs a five-step legal evaluation of the claimant using that evidence. 20 C.F.R. § 404.1520.

In that evaluation, the ALJ must determine: (1) whether the claimant is "presently engaged in substantial gainful activity"; (2) whether the claimant has a "medically severe impairment or impairments"; (3) whether the claimant's impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation; (4) whether the impairment prevents the claimant from performing his past relevant work; and (5) whether the claimant, in light of his age, education, work experience, and residual functional capacity ("RFC"), can still perform another job that is available in the national economy. *Id.* A claimant's RFC is an assessment of the most a claimant is able to do notwithstanding his physical and mental limitations. *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). According to Social Security Ruling ("SSR") 96-8p, RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities" in a work setting for eight hours per day, five days a week, or an equivalent work schedule. Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).[1] It entails "a 'function-by-function' inquiry based on all of the relevant evidence of a claimant's ability to do work." *Id.* (citation omitted).

The claimant bears the burden of proof in the first four steps of the evaluation. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). At step five,

---

[1]The SSA publishes SSRs that "are binding on all components of the Social Security Administration. These rulings represent precedent[ial] final opinions and orders and statements of policy and interpretations that [the SSA has] adopted." 20 C.F.R. § 402.35(b)(1).

however, the burden shifts to the Commissioner to identify specific jobs available in the national economy that the claimant can perform. *Id.* In making this determination, an ALJ may call a vocational expert ("VE") to testify as to whether a claimant can perform other work that exists in the national economy. *See Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). A VE may draw his or her conclusions from a number of sources, including the Dictionary of Occupational Titles ("DOT"). *Herrmann v. Colvin*, 772 F.3d 1110, 1113-14 (7th Cir. 2014). The DOT, last published by the U.S. Department of Labor in 1991, provides a brief description of occupations within the national economy and lists the capabilities that each occupation requires of a worker. *See generally* DOT, 1991 WL 645964. Along with VE testimony, the SSA generally relies on the DOT to determine if there are jobs in the national economy that a claimant can perform given his or her RFC, age, education, and work experience. *See* 20 C.F.R. §§ 416.966–416.969.[2] The ALJ has "final responsibility" for determining the claimant's vocational factors to incorporate into the ALJ's decision on the availability of jobs in the national economy. *See id.* §§ 404.1527(d)(2), 416.927(d)(2).

**2.2    Relevant Facts and Procedural History**

Plaintiff's alleged disability began in June 2009, when he was fifty-one. His date last insured ("DLI") was June 2011. To be entitled to benefits, a claimant must demonstrate that he was disabled from the day he claimed benefits until his DLI. 42 U.S.C. § 423; *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010). Plaintiff has three years of college education in computer

---

[2]The Seventh Circuit is critical of the DOT, calling it "obsolete." *Hermann v. Colvin*, 772 F.3d 1110, 1113-14 (7th Cir. 2014). The DOT was nevertheless cited in Plaintiff's hearing before the ALJ, and he does not now object to its use. *See* (Docket #22-1 at 63).

engineering. He has worked as an assembler, machine operator, and in tech support. Plaintiff's last employment was with AT&T from early 2008 until mid-2009.

In 2008, Plaintiff went to the emergency room with heart problems. He was prescribed various medications and was thereafter considered stable. Plaintiff was terminated from AT&T for work absences after his 2008 hospitalization and for instances of sleeping on the job, which he attributes to his heart medications. In July 2009, a doctor's note indicated that Plaintiff's medications could induce fatigue and drowsiness, and that Plaintiff would benefit from short breaks from work when he felt those symptoms. In 2013, he was in a car accident, causing various physical ailments. In July 2014, Plaintiff underwent a psychological assessment. It determined that Plaintiff had developed depression from his medical issues, described the side effects of his medications, and established how the two impacted his work and home life. His depression had gone untreated up to that point. In 2015, a therapist concluded that Plaintiff had long-term major depression.

Plaintiff began his quest for disability benefits in May 2012. He claimed benefits starting in June 2009. Plaintiff's claim was initially denied in August 2012 and denied again upon Plaintiff's request for reconsideration in April 2013. Plaintiff then filed a request for a hearing in June 2013. The hearing was originally scheduled for almost two years later in February 2015. When Plaintiff appeared at that hearing without counsel, the ALJ granted a continuance for Plaintiff to seek representation.

The hearing was resumed in April 2015, though Plaintiff still proceeded *pro se*. The hearing took just fifty-five minutes and produced a thirty-one page transcript. Testimony was received from Plaintiff, Plaintiff's

mother, and a VE. The hearing began with a brief discussion of the completeness of the documentary record. The ALJ then stated that "the issue in the case essentially is whether you are a disability [sic] as that term is defined in the Social Security Act[.]" (Docket #22-1 at 37). The ALJ did not explain that the relevant time period for determining whether Plaintiff was disabled, and thus qualified for benefits, was from June 2009 until his DLI in June 2011.

Plaintiff then began his testimony. The ALJ asked Plaintiff about his current, unsuccessful efforts to find employment. They then discussed Plaintiff's employment history. Throughout this dialogue, Plaintiff mentioned his various ailments, including heart problems, medication side effects, and depression, and how those impacted his ability to work at the time. The ALJ consistently followed up with questions about how Plaintiff's conditions were affecting him that day. The ALJ then inquired about Plaintiff's daily life. Plaintiff testified that he does little more than stay in his mother's home during the day, unable to sit for long periods due to back pain, and that he falls asleep regularly from medication-induced drowsiness. Plaintiff also offered anecdotes about his impairments affecting his daily life, including difficulty walking and spells of dizziness.

Next, Plaintiff's mother was called to speak about her son's condition. He had been living with her for six years as of the date of the hearing. She initially described his sleeping and walking difficulties. The ALJ then told Plaintiff that he could ask questions, noting that attorneys typically do so. Plaintiff apparently had difficulty thinking of appropriate questions, so the ALJ offered to continue his inquiry while Plaintiff considered further. Plaintiff's mother went into additional detail about

Plaintiff's drowsiness and sleep habits. Plaintiff then took over the questioning, but in essence he simply began to testify again.

The final witness was the VE. The ALJ elicited some background about the VE's qualifications and impartiality. The ALJ asked Plaintiff if he objected to the VE's testimony, and he said no. The VE described Plaintiff's work history. The ALJ asked the VE a hypothetical about whether someone with Plaintiff's symptoms and medical needs could work. She said there were no available jobs in the national economy for someone with Plaintiff's RFC, because Plaintiff needed sedentary work, while most of the jobs he was qualified for required light physical activity. The VE further stated that no available jobs would permit occasional naps during work hours. As with his mother, Plaintiff could not think of any questions for the VE. Neither the ALJ nor the VE asked Plaintiff about how he performed his job at AT&T on a day-to-day basis.

The hearing concluded with the ALJ informing Plaintiff that he would render a written decision. A few days after the hearing, the ALJ issued an unfavorable decision. Inexplicably, the ALJ stated that Plaintiff's DLI was December 2014. The ALJ then proceeded through the five-step analysis. The ALJ found that Plaintiff passed through the first three steps; he did not engage in substantial gainful activity during the relevant period and had severe impairments related to his heart health. The ALJ did not believe that Plaintiff's mental impairments were severe. The ALJ further concluded that Plaintiff had an RFC to perform sedentary work. At step four, the ALJ found that this RFC equipped Plaintiff to perform his past relevant work, which was described as being a customer service representative.

Plaintiff sought review of the unfavorable decision with the SSA's Appeals Council. The Council reviewed the decision and responded to Plaintiff on November 29, 2016, acknowledging that the ALJ had stated the wrong DLI in his decision; the DLI was June 2011, not December 2014. Other than correcting that error, the Council informed Plaintiff that it intended to adopt the ALJ's decision in its entirety. In his communications with the Council, Plaintiff offered disputes about the decision and made related factual statements. However, as in the hearing itself, these statements focused on Plaintiff's present medical condition. The Council's final decision was issued on February 28, 2017. It noted that Plaintiff's new evidence was not relevant because it concerned his disabilities after the DLI. Plaintiff then filed this civil action seeking judicial review of the Council's decision.

3.  **LEGAL STANDARD**

A district court has jurisdiction over a civil case challenging a final decision of the Commissioner. 42 U.S.C. § 405(g). The court has the authority to reverse or remand the Commissioner's decision if it is not supported by substantial evidence or is not made in accordance with applicable law or regulations. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation and quotation marks omitted). Substantial evidence "must be more than a scintilla [of proof] but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).

This standard mandates deference to the Commissioner's decision. The reviewing court "cannot substitute its own judgment for that of the SSA

by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. "As long as the Appeals Council identified supporting evidence in the record and built a logical bridge from that evidence to its conclusion," this Court must affirm the Commissioner's decision, "even if reasonable minds could differ about the ultimate disability finding." *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017) (quotation omitted). The Court must nevertheless remember that "it is not intended to be a rubber-stamp on the Commissioner's decision." *Stephens*, 888 F.3d at 327.

4.   **ANALYSIS**

Plaintiff presents four arguments. First, he claims that the ALJ did not meet his duty to develop the administrative record. Plaintiff proceeded *pro se* at the administrative level and contends that the ALJ's duty to develop the record was therefore heightened. Second, Plaintiff argues that the ALJ ignored evidence of Plaintiff's fatigue which would preclude him from continuing to do his past relevant work. Third, Plaintiff says the ALJ erred in determining that his past relevant work was as a "customer service representative" as that term is defined by the DOT. Finally, Plaintiff maintains that the ALJ should have sought a medical expert to opine on the effect of his long-standing depression on his ability to work.

The Court need not reach the latter three, merits-focused arguments. Reversal is appropriate on the ground that the ALJ failed to appropriately develop the record. Preliminarily, the Court must determine the nature of the ALJ's duty in this regard. In all Social Security hearings, an ALJ has a duty to develop a full and fair record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). Plaintiff asserts that because he proceeded at his hearings *pro se*, the ALJ's duty was enhanced. "[W]hen a claimant appears without

counsel[,] . . . the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* (quotations omitted).

Defendant counters that this heightened duty does not arise when a *pro se* litigant makes a valid waiver of his right to counsel. Persons seeking disability benefits have a statutory right to counsel, but this right may be waived. *Skinner*, 478 F.3d at 841. ALJs are required to give a detailed explanation of a claimant's right to counsel before a waiver of that right will be considered valid. *Id.* "The ALJ's failure to obtain a valid waiver of counsel" by giving an inadequate explanation "heightens his duty to develop the record." *Id.* Defendant maintains that Plaintiff made a valid waiver of his right to counsel. (Docket #19 at 5-9). Plaintiff concedes that he validly waived his right to counsel; indeed, he says that he has never contested the validity of the waiver. (Docket #20 at 1).

In the Court's view, neither party is quite correct, but the Court cannot fault them for this; the Seventh Circuit's instruction in this area is not the picture of clarity. In *Binion*, decided in 1994, the Court of Appeals held as follows:

> In *Smith v. Sec'y of Health, Education, & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978), we held that a claimant is not entitled to a remand based on inadequate notice of the right to representation unless the ALJ did not develop a full and fair record. The ALJ's duty to develop the record fully and fairly where the claimant proceeds without counsel is met if the ALJ probes the claimant for possible disabilities and uncovers all of the relevant evidence. *Id.*; *see also Thompson v. Sullivan*, 933 F.2d at 585-86. However, the ALJ has the same duty to develop the record when a plaintiff is without counsel regardless of whether the plaintiff's waiver of counsel was valid: "Where the disability benefits claimant is unassisted by counsel, the ALJ has a duty 'scrupulously and conscientiously [to] probe into, inquire of and explore for all of the relevant

> facts. . . .'" *Smith*, 587 F.2d at 860, citing *Gold v. Secretary of HEW*, 463 F.2d 38, 43 (2d Cir. 1972). So as to give teeth to the requirement which we established in *Thompson* that the ALJ adequately explain the right to counsel, we now hold that if the ALJ does not obtain a valid waiver, the burden is on the Secretary to show the ALJ adequately developed the record. Without the shifting of this burden, no sanction would exist for an ALJ's inadequate explanation of a claimant's rights.

*Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). Thus, under *Binion*, the question is not whether the ALJ's duty has become heightened, but rather on whom the burden rests to establish the appropriate development of the record. *Binion* has not been overruled and has indeed been relied upon in later opinions. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997); *Ferguson v. Barnhart*, 67 F. App'x 360, 366-67 (7th Cir. 2003).

*Binion*'s focus on burden shifting seems inconsistent with *Skinner*'s emphasis on whether there is a controlling, valid waiver of counsel. Further, unlike either of those cases, *Nelms* makes no mention of counsel waiver. While both *Nelms* and *Skinner* cite *Binion*, neither discusses these discrepancies. Thus, the Court is left with three potential paths: (1) under *Binion*, apply the heightened "scrupulous" and "conscientious" duty for record development, and in light of the valid counsel waiver, place the burden of proof of Plaintiff, (2) under *Skinner*, apply the general duty to develop a "full and fair" record in light of the valid counsel waiver, or (3) under *Nelms*, apply the heightened duty simply because Plaintiff proceeded *pro se*. Without any better reason to choose, the Court believes that the most recent instruction should control. It will therefore apply the heightened duty described by *Nelms*, with the burden on Plaintiff to show that the record was not fully developed. *See Wilson v. Berryhill*, No. 17-2423, 2018 WL 3005130, at *3-4 (7th Cir. June 14, 2018).

*Nelms* offers additional guidance in applying that heightened duty beyond describing it as scrupulous and conscientious. While the *pro se* claimant must come forward with some medical evidence of disability, the ALJ is in turn "required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Nelms*, 553 F.3d at 1098; *Ferguson*, 67 F. App'x at 367 ("To determine whether an ALJ's development of the record qualifies as 'full and fair,' we have, in the past, considered a number of factors, including: (1) whether the ALJ obtained all of the claimant's medical and treatment records; (2) whether the ALJ elicited detailed testimony from the claimant at the hearing (probing into relevant areas, including medical evidence on the record, medications, pain, daily activities, the nature of all physical and mental limitations, etc.), and (3) whether the ALJ heard testimony from examining or treating physicians.") (citing *Binion*, 13 F.3d at 245).

Courts must, nevertheless, defer to the "the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation." *Id.* To overcome this presumption, the claimant must show that there is a significant omission in the record. *Id.* An omission is only significant if it is prejudicial to the claim. *Id.* Prejudice can be demonstrated by reference to specific, relevant facts that the ALJ failed to elicit and then consider in rendering his decision; "mere conjecture or speculation" about potentially helpful evidence will not suffice. *Id.*

With these instructions in mind, the Court turns to Plaintiff's specific arguments. First, Plaintiff contends that the ALJ failed to explain what a DLI was and how that was relevant to Plaintiff's application. Second, Plaintiff accuses the ALJ of focusing his questions on Plaintiff's present

condition and functional capacity, rather than the relevant period from the July 2009 onset date to the June 2011 DLI.

The Court agrees and finds that the ALJ failed to appropriately develop the record on both grounds. Defendant admits that the ALJ did not explain what a DLI was in either the February or April 2015 hearings. She claims, however, that "Plaintiff was not confused about his [DLI]" because a DLI was stated on a few forms which had been given to him prior to the hearings. (Docket #19 at 4). Other evidence contradicts this assertion. The ALJ's failure to explain at the April 2015 hearing what a DLI is, and why it is important, is inexcusable when dealing with a *pro se* claimant. Plaintiff clearly did not know what time period was relevant, as most of his testimony focused on his current medical conditions. This is also evident in his later submissions to the Appeals Council. Finally, though the ALJ did not conclude that Plaintiff's mental health issues qualified as a disability, this does not absolve the need to account for those impairments in handling Plaintiff's claim. *See Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010) ("Because [the claimant] was unrepresented by counsel—and mentally impaired to boot—the administrative law judge was supposed to try by questioning him to obtain all information relevant to his claim[.]").

More important than the DLI issue was the ALJ's improper focus on Plaintiff's present condition. The ALJ told Plaintiff that the purpose of the hearing was to determine whether he was disabled, but did not explain that this inquiry was limited to the 2009-2011 time period. Understandably, Plaintiff's testimony, and that of his mother, discussed his most recent medical treatments and how his conditions affected his daily life. The ALJ did not attempt to shift their focus to the relevant period, but instead posed questions in the present tense. Further, what little testimony was obtained

which related to the relevant period was directed at Plaintiff's work history; almost nothing was said about his medical treatment during that time. In essence, the ALJ's questioning led Plaintiff down a garden path which had no bearing on his claim for benefits. The Court does not suggest that this was intentional, but it was error all the same. The Court concludes that the hearing did not comport with the ALJ's heightened duty to develop the record.

The Court further finds that the ALJ's failure develop the record infected other parts of Plaintiff's case, thereby demonstrating prejudice. The ALJ determined that Plaintiff could perform his past work, despite his extreme fatigue, because he engaged in daily life activities, and some employment activity, undermining the alleged severity of his symptoms. Plaintiff counters that his testimony about medication-induced fatigue is consistently supported by various records from 2009 to 2014. The ALJ could have explored this discrepancy at the hearing, but chose not to. In the same vein, the ALJ relied almost entirely on the VE's characterization of Plaintiff's past work as that of a "customer service representative." Plaintiff now says that his past work was, instead, that of an information technology assistant. The ALJ made little effort to explore precisely what Plaintiff did in his job at AT&T, which would be critically important in determining the proper characterization of Plaintiff's past work. Finally, though Defendant is correct that live medical testimony is not always required, it may have helped illuminate Plaintiff's mental health history, as well as his current functioning, and thus his ability to present his case. The ALJ did not solicit such testimony.

Defendant contends that Plaintiff has not shown prejudice because, since the April 2015 hearing, he has had multiple opportunities to submit

new evidence regarding his disability during the relevant time period. The first such occasion was of little benefit, as it came in the proceedings before the Appeals Council, when Plaintiff was still unrepresented. The second is the instant proceeding, wherein Defendant maintains that Plaintiff was free to offer new evidence. For this proposition, Defendant cites to the sixth sentence of Section 405(g). That sentence provides, however, that new evidence must be taken in proceedings before Defendant, in a hearing if necessary, but not by this Court directly. Thus, if Plaintiff had offered some new evidence in this case, it seems the Court might still be required to remand the matter. *See Roberts v. Berryhill*, 721 F. App'x 507, 511 (7th Cir. 2018).[3]

**5. CONCLUSION**

In light of the foregoing, the Court must reverse Defendant's decision denying benefits to Plaintiff and remand this action to the SSA for further proceedings consistent with this opinion. The Court reiterates that it offers no opinion on the other grounds for reversal which Plaintiff raised but upon which the Court did not rely.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner of Social Security in this matter be and the same is hereby **REVERSED** this matter be and the same is hereby **REMANDED** to the Commissioner of Social Security pursuant to Sentence Four of Section 205 of the Social Security Act, 42 U.S.C. § 405(g);

---

[3]The propriety of a "sentence six" remand, as it is known, is determined by whether the new evidence is material and whether there was good cause for the failure to bring that evidence forward in the prior proceeding. *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009). Neither party has argued for a sentence six remand.

**IT IS FURTHER ORDERED** that, on remand, the ALJ shall conduct proceedings consistent with this opinion and issue a new decision consistent with all applicable rules and regulations as interpreted in relevant Seventh Circuit case law; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of August, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge